(116 App. Div. 740)

ANDERSON v. FRY et al.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

1. TRUSTS—CREATION—EXPRESS TRUST—AGENT TO COLLECT AND INVEST.

An instrument appointing an agent to receive all sums to which the person executing the instrument might thereafter become entitled as residuary legatee, and to invest and reinvest the same, creates an active, continuing express trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 25, 34–38.]

2. SAME—ACTIONS—LACHES.

Lapse of time does not bar an action for accounting against the trustee of an active, continuing express trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 571.]

3. SAME—DEFENSES—ASSIGNMENT—FRAUD.

　　Where an assignment to the trustee is set up as a defense in an action for an accounting under the trust, the effect of the assignment can be overcome by showing its fraudulent character, and, if fraudulent, the trust is not affected by the assignment.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 404, 460, 462.]

4. LIMITATION OF ACTIONS—ASSIGNMENT OF TRUST FUND—ACTION TO SET ASIDE —FRAUD.

　　Under Code Civ. Proc. § 382, subd. 5, providing that an action to procure a judgment on the ground of fraud must be brought within six years after discovery of the fraud, an action to set aside an assignment of trust fund to the trustee for fraud is not barred until six years after discovery of the fraud.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 481–486.]

5. TRUSTS—ENFORCEMENT—ACTIONS—FORM OF REMEDY.

　　Where a trust is not created after money is received by the trustee, an action for money had and received will not lie for its recovery by the cestui que trust, and an action against the executors of the trustee to compel an accounting is not one for recovery of money merely in which obtaining preliminary relief is a mere incident, nor is it one in which plaintiff has a concurrent remedy in equity and in law.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 554.]

6. SAME—TIME TO SUE.

　　The time within which an action for an accounting under a trust may be brought is not affected by a void assignment of the fund to the trustee.

7. APPEAL—REVIEW—FINDINGS OF COURT.

　　A finding of facts by the court will not be reviewed.

Appeal from Special Term.

Action by William B. Anderson, as ancillary administrator of the estate of Mary Elizabeth Purkess, deceased, against John C. Fry and William H. Fry, as executors of the estate of John C. Fry, deceased. Judgment for defendants, and plaintiff appeals. Reversed.

This action is brought to compel the defendants, as executors of John C. Fry, deceased, to account for property claimed to have been held by said Fry at the time of his death as trustee for his sister, plaintiff's intestate. William H. Fry died in this country in 1878, possessed of a large estate located here. His brother, the said John C. Fry, who also resided in this country, was made one of several executors of his estate. After making several specific legacies, among others a legacy of $12,000 to his said sister, Mary Elizabeth Purkess, he divided his entire residuary estate equally among his two brothers, three sisters, and a cousin, all of whom, except the said John C. Fry, resided in England. The said Mary Elizabeth was then a maiden lady at service as a parlor maid. On the 5th of May, 1879, the said Mary Elizabeth was paid her specific legacy of $12,000, and on June 6, 1879, she was paid $25,000 on account of her distributive share in the residuary estate. On the 18th of July, 1879, she executed and delivered to said John C. Fry an instrument in writing appointing him her agent and attorney to receive all sums to which she might thereafter become entitled as residuary legatee, and to take, invest, and reinvest the same for her benefit. By virtue of this instrument the said John C. Fry received $10,000 September 9, 1879, and $10,000 June 22, 1880, and executed receipts therefor in the name of the said Mary Elizabeth. On the 9th day of August, 1880, the said Mary Elizabeth made, executed, and delivered to the said John C. Fry an instrument in writing assigning to him all the money or property then in his possession or which he might thereafter receive on account of her share in the residuary estate of the said William H. Fry, and on January

1, 1881, the said John C. Fry received $21,058.34, and on February 28, 1881, $328.36, for which he receipted in the name of said Mary Elizabeth and at said time there was still a balance in the hands of the executors undistributed. The said testator gave his uncle, John Billett, the use of $10,000 for life. The latter died in 1883, and the said John C. Fry received from the executors the principal of said trust fund, which would have belonged to the said Mary Elizabeth but for said assignment, together with interest thereon from said 30th of April, 1884, to her. The said Mary Elizabeth married November 29, 1880. She died December 16, 1897, leaving her surviving her husband and a son. John C. Fry died October 29, 1894. The Trial Court found that the assignment of August 9, 1880, was procured by fraud, but that the action was barred by the statute of limitations.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, RICH, and MILLER, JJ.

Howard Taylor (William B. Anderson and William Williams, on the brief), for appellant.

L. A. Gould, for respondents.

MILLER, J. The acceptance by John C. Fry of the written instrument of July 18, 1879, and the receipt by him of money thereunder, created the relation of trustee and cestui que trust between him and said Mary Elizabeth. Day v. Roth, 18 N. Y. 448; Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693. And see Sheldon v. Sheldon, 133 N. Y. 1, 30 N. E. 730. This was an active, continuing, express trust, and no citation of authority is required upon the proposition that mere lapse of time does not bar an action for accounting against a trustee of such a trust, but the learned justice at Special Term was of the opinion that the assignment of August 9, 1880, terminated the trust, and that from that time the defendants and their testator to the knowledge of the plaintiff's intestate held adversely the fund sought to be reached. The learned justice found as a fact that the plaintiff's intestate did not know the extent of the moneys so held by the defendants' testator. The difficulty with this position is that the termination of the trust depended entirely upon the validity of the assignment, which the court has held to have been obtained by fraud. Of course, the assignment was only voidable in the sense that the party defrauded could have ratified or confirmed it, but, when it was set up as a defense to the accounting, its effect could be overcome by showing its fraudulent character. Kirchner v. N. H. S. M. Co., 135 N. Y. 182–189, 31 N. E. 1104; Wilcox v. Am. Tel. & Tel. Co., 176 N. Y. 115, 68 N. E. 153, 98 Am. St. Rep. 650. When the effect of the instrument is thus overcome, unless something else has intervened to change the situation, it remains the same as though the instrument had never existed. Suppose the plaintiff were required in the first instance to bring an action to set aside the assignment on the ground of fraud. Such action would not be barred by lapse of time until six years after the discovery of the fraud. Subdivision 5, § 382, Code Civ. Proc.; Carr v. Thompson, 87 N. Y. 160; Bosley v. National Machine Co., 123 N. Y. 550, 25 N. E. 990. The defendants' testator received the money in question as trustee. The trust was not created after the money came into his hands. An action at law could not, therefore, have been maintained for money had

and received.   Husted v. Thomson, 158 N. Y. 328, 53 N. E. 20.   The case is not one for the recovery of money "merely," in which the obtaining of preliminary relief is a mere incident, as was the case of Carr v. Thompson, supra, nor is it one in which the plaintiff has a concurrent remedy in a court of equity and in a court of law, as was the case of Matter of Neilley, 95 N. Y. 382.   In that case it was held that there was no trust which survived the death of the husband of the cestui que trust, for the reason that a feme covert could not make a valid agreement constituting another her trustee in 1828, which was the date of the transaction involved.   The cases of Kane v. Bloodgood, 7 Johns. Ch. 90, 11 Am. Dec. 417, Lammer v. Stoddard, 103 N. Y. 673, 9 N. E. 328, and Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554, relied upon by the respondents, are not in point for the reason that they do not involve cases of active, continuing, express trusts.   It may be granted that, where the trust is terminated so that there is an immediate obligation to pay over, the statute begins to run immediately, likewise in case of repudiation of the trust by the trustee to the knowledge of the cestui que trust, but I fail to see any similarity between such cases and the case at bar.   The defendants' testator was trustee for the plaintiff's intestate, to receive, manage, invest, and reinvest the moneys sought to be reached.   If the instrument of August 9, 1880, was valid, she gave him these moneys.   If it was not valid, she did not.   The court has found it to have been invalid, and in order to sustain the judgment appealed from it is necessary to hold that the capacity in which a person holds funds may be changed by a void instrument, because, of course, the adjudication now that the assignment was fraudulent and void must relate back to the time it was given.   The plaintiff brings this action for an accounting, and, when the assignment of August 9, 1880, is set up as a defense, overcomes its effect by showing that it was procured by fraud. The situation is as though the action had been brought to set aside the assignment and for an accounting.   As the latter action could be brought any time within six years after the discovery of the fraud (see cases cited supra), it seems clear that the present action is in precisely the same situation, and, as it is expressly found that the plaintiff's intestate never had knowledge of the fraud and as equity alone afforded a complete and adequate remedy, it seems clear that the statute of limitations is not a bar to the action.

The respondents ask us to review the finding that the assignment of August 9, 1880, was procured by fraud, and for the purpose of sustaining the judgment to find that it was not so procured, but we cannot do this.   The finding is evidently based mainly on the presumption which equity permits a cestui que trust to invoke respecting dealings with the trustee for the purpose of insuring honesty and fair dealing on the part of the latter.   To what extent this presumption will be indulged in after long lapse of time and the death of the parties is not now before us.

The judgment must be reversed, and a new trial granted, with costs to abide the final award of costs.   All concur.