GEORGE H. BRICK and Another, Doing Business under the Firm Name and Style of BRICK & BALLERSTEIN, Appellants, *v.* COHN-HALL-MARX Co., Respondent.

First Department, May 28, 1937.

*Eugene L. Bondy* of counsel [*Norman Winer* with him on the brief; *Bondy & Schloss*, attorneys], for the appellants.

*Milton C. Weisman* of counsel [*Melvin A. Albert* with him on the brief; *Weisman, Quinn, Allan & Spett*, attorneys], for the respondent.

GLENNON, J. This appeal brings up for review an order dismissing a complaint. We are assuming for the purpose of this appeal, and no more, that, with some slight variations, the appellants' summary of the material facts which appear in the complaint is correct.

The plaintiffs are partners. The defendant is a domestic corporation. In 1924 plaintiffs and defendant entered into an agreement which is Exhibit A annexed to the complaint. That agreement recites that, whereas both parties had made application for a patent upon a certain package devised for the marketing of bolts

of cloth and whereas both applications were then pending in the United States Patent Office and the parties desired to avoid controversy over the priority of their claims, it was agreed that the plaintiffs would not oppose the granting of the patent to the defendant and that the defendant would thereafter pay to the plaintiffs seven and one-half cents for each package used by the defendant or by others licensed by the defendant. Thereafter, in 1925, the parties executed Exhibit B annexed to the complaint, which for a short period modified the terms of royalty, otherwise leaving the contract the same.

It is then alleged that defendant and its licensees actually used more than 300,000 of these packages but paid royalty to the plaintiffs on only 67,598, thus underpaying the plaintiffs some $17,430. Next, it is alleged that the defendant was at all times solvent and able to pay these sums. Up to this point the complaint establishes that there was a contract, a breach thereof, and that plaintiffs might at any time during the six years limited by statute have recovered what was due them. It was this valuable right that plaintiffs subsequently claim they were deprived of by defendant's fraud.

In paragraph ninth it is then alleged that every three months, beginning in July, 1924, the defendant rendered a statement to the plaintiffs purporting to show the number of packages used by the defendant and licensed by the defendant during the preceding three months. These statements were represented by the defendant to be true in order to induce the plaintiffs to rely thereon and in such reliance to refrain from bringing any action for what was due to plaintiffs. These statements were false and defendant kept false books to prevent plaintiffs' discovery of the falsity of the statements. The defendant well knew that these were false when it rendered them and the plaintiffs relied on them, as it was intended that they should rely, and so refrained from taking any action to collect what was due. Were it not for these false representations, plaintiffs would promptly have brought legal action to enforce their rights under the agreement aforesaid, but not knowing of the fraud until the Statute of Limitations had barred the action for breach of contract, the plaintiffs were deprived of that remedy and were damaged to the extent of its value.

It is then alleged in paragraph nineteenth that " In February, 1936, the plaintiffs first learned of facts which might reasonably cause them to suspect the fraud aforesaid." Thereupon, plaintiffs demanded payment of the damages sustained by them.

The defendant contends that this action, on its face, is barred by the six-year Statute of Limitations. We are inclined to the

view that the statute is not a bar to this action, which is predicated upon the theory of fraud, pure and simple. We are told that the case of *Carr* v. *Thompson* (87 N. Y. 160) controls. With that contention we cannot agree. There, the action was based upon a breach of contract. Here, the gravamen of the action is fraud. In that case Judge FINCH said, in part: " No damages are asked for the fraud, but simply justice under the contract and the agent's duty. The fraud is important, in the pleading and the proofs, not at all as being the cause of action, but merely as a necessary fact to open the closed accounts, and prevent them from being a conclusive answer to the judgment sought. The learned counsel for the plaintiffs, as we understand him, distinctly admits this proposition. He says, ' this is not an action for relief on the ground of fraud; the fraud is availed of only to effect the opening of the false accounts rendered, and as a ground on which to charge defendant with annual rests in the interest account.' This language very correctly, and very frankly, describes the character of the plaintiffs' cause of action."

We had a similar situation presented to this court in the case of *Jacobs* v. *McGurk* (242 App. Div. 612; affd., 267 N. Y. 601). The action was commenced on April 11, 1930. In that case the complaint contained two causes of action. In the first it was alleged that in the spring of 1921 plaintiff appointed the defendant her agent to sell a certain painting on a commission basis, and intrusted him with the painting for the purpose of enabling him to sell it. In September, 1921, defendant sold the painting for the sum of $14,000. He paid over to plaintiff only the sum of $7,000, claiming, fraudulently, that that was the amount he received. It was then alleged that plaintiff did not discover the true facts until less than six years prior to the commencement of the action and that she thereupon demanded that defendant account, and that he refused. In the second cause of action it was alleged that defendant, as plaintiff's agent, sold the painting for $14,000 and, with intent to defraud and deceive plaintiff, stated that he had only received $7,000. Plaintiff, in ignorance of defendant's fraud and deceit, and relying upon his statement, accepted the check for $7,000, and paid the defendant his commission. It was then alleged that defendant's fraud and deceit was not discovered by plaintiff until less than six years prior to the commencement of the action. Defendant interposed an answer containing a general denial and set up as a defense to each cause of action the six-year Statute of Limitations. The case was heard at Trial Term before a court and jury. Appropriate motions based upon the statute were made by the defendant and denied by the trial justice. A verdict was rendered in favor of the plaintiff for $7,700 principal,

together with interest in the sum of $5,544, and judgment was entered. The defendant appealed to this court relying chiefly upon the Statute of Limitations. The judgment was affirmed here by a divided court. Two of the justices dissented from the ruling of the majority upon the authority of *Carr* v. *Thompson* (*supra*). Subsequently, the defendant appealed to the Court of Appeals. Although the defendant again contended that the action was barred by the Statute of Limitations and cited the same case as authority for his position, the judgment was unanimously affirmed.

Since that is so, we have concluded that the plaintiffs have pleaded facts sufficient to constitute a cause of action for fraud, and, consequently, the order and judgment as entered should be reversed, with costs, and the motion denied.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Judgment and order unanimously reversed, with costs, and motion denied.